## PONDER v. JEFFERSON STANDARD LIFE INS. CO.

(District Court, W. D. Louisiana, Shreveport Division. April 6, 1925.)

No. 1490.

**I. Insurance ⊚⟲354(1)—Letter to insured held sufficient notice of dishonor of check.**

A letter received by insured from the insurer, advising him that a check sent in payment of premiums had been refused payment for lack of funds, held, sufficient notice to him that his premiums were not paid, and to require him to take appropriate action for their payment.

**2. Evidence ⊚⟲181—Testimony as to mailing letters held sufficient.**

Testimony that letters from an insurance company to an insured copies of which were attached to the depositions, were written and mailed in due course, held, sufficient to establish such facts, where the witnesses were not asked on their cross-examination whether they personally stamped and mailed the letters.

**3. Evidence ⊚⟲181—To render copies of letters of large concern admissible, proof of mailing need not be made by personal recollection.**

To render copies of letters written and sent out by a large business concern admissible in evidence, it is not necessary that the identical person who deposited the letters in the mail should positively so swear from his personal recollection.

**4. Insurance ⊚⟲376(1)—Cashier of a branch office of an insurance company held without power to waive lapse of policies.**

Where life policies provided that failure to pay a premium within the 30 days' grace allowed should cause the policies to lapse, and that no agent or person other than certain designated officers of the company should have power to extend the time for payment, or waive any lapse, the cashier of a branch office of the company held not to have such power.

At Law. Action by Gertrude S. Ponder against the Jefferson Standard Life Insurance Company. Judgment for defendant.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, La., for plaintiff.

Eugene J. McGivney, of New Orleans, La. (Solomon S. Goldman, of Shreveport, La., and Brooks, Parker & Smith, of Greensboro, N. C., on the brief), for defendant.

DAWKINS, District Judge. This is an action by the beneficiary upon three policies of insurance covering the life of her husband, all dated March 15, 1922, and for the sums of $5,000, $2,500, and $1,000, respectively. The defense is that the deceased had elected to pay the premiums in quarterly installments under the terms of the policies, and that while premium receipts were issued for the several sums due on December 15, 1923, the checks given in payment therefor were dishonored, the amounts called for were never actually paid, and the policies all lapsed for nonpayment of premiums.

Before the trial defendant had served upon plaintiff a motion to produce or subpœna duces tecum calling for the correspondence which it claimed had passed between the company and the insured regarding these premiums, but plaintiff disclaimed any knowledge of the letters referred to, save one, and that was dated January 24, 1924. This letter reads as follows:

"Memphis, Tenn., January 24, 1924.
"Re Policies Nos. 157056-7-8, Ponder.

"Mr. James M. Ponder, 1833 Line Ave., Shreveport, La.—Dear Sir: This is to advise you that your check in the amount of $123.99 which you gave us to cover the quarterly premiums under your policies above numbered, has been returned to us unpaid account 'insufficient funds' and 'closed.' I feel sure there must be some mistake about this, and I am therefore drawing a draft on you today for the amount of the check, and attaching the check to the draft, and will thank you to get in touch with your bank immediately upon receipt of this letter and make arrangements to take care of this draft when same is presented for payment. For your information the last day of grace allowed for settlement of these premiums expired January 15th, and your policies are now lapsed until this check is made good. I therefore trust you will give this matter your immediate attention.

"Yours very truly,
"cpc    C. P. Coleman, Cashier."

I take it from the brief of plaintiff that it is conceded the quarterly premiums were not paid within the period of grace which expired on January 15, 1924. In the brief it is said:

"Insured sent a check for premium due December 15, 1923, some days before the expiration of the grace period—i. e., before January 15—and it was received and a receipt issued and sent him, the latter attached to the petition (one for each policy). There is no stipulation in the policy regarding payment of premiums by check, but there is no question that this was customary. It is evident the check was not in fact paid, and

that insured did not in fact have money on deposit in bank drawn on at the time of drawing the check or subsequently. But it is shown that it was not unusual for checks to be drawn by persons not having a deposit to cover, the drawer being notified and taking up the check when presented for payment. The receipt sent for this quarterly premium recites: 'It is understood and agreed that, if draft, money order, or check is given in payment of this premium, this receipt is void, if said draft, money order, or check is not paid on presentation.' The policy contains the usual conditions for forfeiture or termination in case a premium falling due is not paid when due or within the grace period, and we concede that it contemplates payment in lawful money ordinarily, and unless there is an agreement or practice to receive payment otherwise, as by check, etc. We also concede that, while forfeitures are not favored, courts enforce them where clearly provided for in the contract, and in this case nonpayment of a premium within the time provided in the contract would operate to forfeit the policy, unless some conduct or act of the insurer, for whose benefit the provision is inserted, effect a waiver of forfeiture.

"Insured accepted the check, as shown by its pleading, subject, of course, to payment on proper presentation. The evidence of presentation does not amount to proof, nor even create a presumption of presentation, for it is not shown in whose hands the check was, other than the cashier of the insurer, who says he deposited it in usual course and it came back. This certainly does not raise a presumption of proper and timely presentation at the drawee bank. Certainly evidence of officers and employees of the forwarding bank was available, as well as the evidence of officers and employees of local banks, or the particular one by and through whom presentation was made.

"However, the company's cashier addressed a letter to insured informing him of nonpayment of the check—this letter being dated January 24, 1924, nine days after a forfeiture would have taken place under the terms of the policy—but, instead of asserting forfeiture, the writer did just the contrary, acknowledged that the policy was yet in force, and advised insured that he would draw through a local bank with unpaid check attached to draft, and requested payment of the draft when presented. That letter is produced in the original by plaintiff in her return to a subpœna duces tecum (being the only letter in her possession or knowledge

from defendant to deceased), and a copy of it is also attached to the deposition of defendant's cashier. In so far as there is evidence adduced, and in so far as the plaintiff has knowledge, that was the last communication from defendant to insured.

"When the insured, who was financially embarrassed, no doubt, received that letter of January 24, he had a right to rely on two things: (1) That the policy had not been forfeited; and (2) that a draft for the amount of premium would be drawn on and timely presented to him. There is not the slightest evidence that such a draft was drawn or presented, and, if drawn or presented, evidence thereof was available to defendant. It is certain that defendant did not avail itself of the forfeiture clause for nonpayment of the premium due December 15, 1923 (extended by grace to January 15, 1924), when apprised of the nonpayment of the check sent to cover the premium, but endeavored, or at least announced its intention to try, to collect the check."

[1] I think the letter above quoted, which, having been produced by plaintiff, was received by the assured, was sufficient notice of the check's dishonor, without an affirmative showing of presentment, and that he was required to make it good as demanded by the company, unless, as contended by plaintiff, he had a right to rely upon the advice that the cashier would draw for the premiums, and to assume that the company would waive the forfeiture. I think the proof clearly shows that the check was twice forwarded to the drawee bank and returned unpaid, for the reason that the drawer had no funds to meet it. This within itself was sufficient presentment. In addition, there is no proof that, if the check had been presented to the bank, it would have been paid or, that Ponder or his estate was prejudiced thereby, so as to effect a discharge of the drawer. On the contrary, it is conclusively shown by an employee of the bank that Ponder had not had a personal account with that bank for more than two years, and that his account as agent had been closed more than six months when this check was drawn.

[2] This brings me to a determination, first, of the admissibility and sufficiency of the evidence offered by defendant to show that there was no waiver, and that it subsequently advised the insured of the fact that the policies had been forfeited. In the first place, it is somewhat significant that, of the numerous letters, copies of which are attached to the depositions of the several witnesses of defendant, addressed to Ponder, and which

they swore were written and mailed to him in due course, only the one dated January 24, 1924, by the cashier of the Memphis office, was produced in response to the subpoena duces tecum. That letter happens to be the one containing the advice that this cashier would draw for the amount of the check which had been dishonored. As stated, all of these witnesses swore that the letters were written and mailed, and while, in the cross-interrogatories under the commission by which that testimony was taken, counsel for defendant, as did counsel for plaintiff, asked them to attach copies of such correspondence with Ponder, they were not asked to state whether or not they had personally mailed the letters, carbon copies of which were produced. In argument and brief, the effect of plaintiff's position is that, to make these letters admissible, the defendant must affirmatively show that they were actually stamped and deposited in the mails. However, as above stated, the testimony is positive that the letters were written and mailed in due course, and I do not think I am required to assume that the witnesses did not themselves deposit the communications, properly stamped, in the mail, when plaintiff has had an opportunity on cross-examination to develop these details.

[3] Besides, I think the courts of to-day are bound to take cognizance of the growth and complexity of modern business, and that in an establishment like that of defendant, if, in order to make such correspondence admissible in evidence, it should be held necessary that the identical person who deposited the letters in the mail should positively so swear from personal recollection, the result would be to handicap seriously the administration of justice in modern business transactions, where those who saw fit might dispute the receipt of such correspondence, at least where, as in this case, the only denial that the letters were received is the answer of plaintiff to the rule that she did not find them among her husband's papers. It is true that the insured is dead and cannot testify, yet I do not think this should exclude the correspondence, supported by the testimony given in this case. It appears to be the best proof of which the case was susceptible, and should be received for what it is worth.

[4] Besides, the letter upon which plaintiff relies as waiving the lapsing of the policy is one written by the cashier of the branch office of the defendant at Memphis, Tenn. The policies provide, among other things, as follows:

"This policy and the application therefor (parts 1 and 2), copies of which are attached hereto, constitute the entire contract, and no statement shall avoid any payment under this policy or be used in defense of any claim hereunder unless it is contained in one of these instruments.

"No agent or other person except the president, a vice president, the secretary or an assistant secretary of the company has power on behalf of the company to make, modify or discharge this or any contract of insurance, to extend the time for paying a premium, to waive any lapse or forfeiture or any of the company's rights or requirements, or to bind the company by making any promise respecting any benefits hereunder or by accepting any representation or information not contained in the written application for this policy."

Under these clauses of the policy, granting that the letter of January 24, 1924, might have been so construed, I do not think the cashier at Memphis had any authority to waive the forfeiture. The policies themselves provide that a failure to pay the premiums within the 30 days of grace shall cause them to lapse and that period expired on January 15, 1924. Thereafter the check of the insured given in payment of the premiums, and for which the quarterly receipts attached to the petition were issued, was dishonored, and the cashier at Memphis again returned it to the bank at Shreveport, and wrote the deceased, requesting that he take care of it and send a certificate of good health, in order that the policies might be reinstated. It was again dishonored. Apparently the Memphis office had already remitted the home office at Greensboro, N. C., on the faith of the check when it was first received, for later the cashier at the former place drew upon the general auditor for the amount of these premiums to reimburse himself. The record also shows that numerous letters were written both from Memphis and from the home office in an effort to get Ponder to reinstate his policies, but without results. A notice of the maturity of the next quarterly premium, due on March 15, 1924, was sent out, but upon its face it stated that the premium was due if the policy was still in force, and that the company "hereby gives notice that a payment will be due as specified below, provided this policy is then in force." This was done while efforts were being made to get Ponder to reinstate his policies. The renewal department of the company did not report the nonpayment of the premiums to the actuarial department until March 15,

1924, and on March 22, 1924, the latter entered the policies upon its record as lapsed. This was practically a month prior to the death of the insured.

My conclusion is that the plaintiff is not entitled to recover, for the reason that the policies sued upon had lapsed for nonpayment of premiums prior to the death of the insured. For the reasons assigned, the demands of plaintiff are rejected, at her cost.